*1102 ON REMAND FROM THE SUPREME COURT OF ALABAMA
INGRAM, Presiding Judge.
The prior judgment of this court dated October 25, 1989, has been affirmed conditionally and the case remanded to us by the Supreme Court of Alabama for further consideration. Ex parte Parrish, 581 So.2d 1100 (Ala.1990). In accordance with the opinion of the supreme court, we now address the issue of whether the city’s exercise of its right of condemnation, under the facts of this case, is repugnant to the Alabama Constitution of 1901.
As we noted in our previous opinion, the condemnation which is the subject of this appeal involves a strip of land which is to be used for the installation of an industrial outfall pipeline. The pipeline is being constructed to serve the wastewater needs of the seafood industry and to bring the city into compliance with the discharge limitations of a National Pollutant Discharge Elimination System permit issued by the Alabama Department of Environmental Management acting under the authority of the Federal Clean Water Act. See generally Ala.Code 1975, §§ 22-22-1 to 22-22-14; 33 U.S.C. § 1342. Construction of the pipeline is to be financed through an agreement with a private corporation that was formed through a joint venture of three seafood processing companies in the area. The city, however, will assume the maintenance, operation, and control of the pipeline upon completion.
Section 11-50-50, Ala.Code 1975, authorizes municipalities to make all needful provisions for the drainage of the city, expressly including the right to construct and maintain efficient sanitary and stormwater sewer systems. This section also empowers the city to construct underground sewers through public or private property, provided that just compensation is first made for the private property taken, injured, or destroyed. Furthermore, § 11-50-51 authorizes municipalities to acquire, whenever necessary, the requisite rights and easements by condemnation in the manner prescribed by the constitution and laws of the State of Alabama for the condemnation of lands for public use.
Article I, § 23, Ala. Const. (1901), requires that before a municipality may take private property for public use, it must pay just compensation to the property owner. This provision has been interpreted to provide that property may not be condemned except for a recognized public use, affording benefits which are not vague, indefinite, or restrictive. Gralapp v. Mississippi Power Co., 280 Ala. 368, 194 So.2d 527 (1967). The term “public use,” however, is to be given an elastic or liberal meaning when used in the context of eminent domain proceedings. Florence v. Williams, 439 So.2d 83 (Ala.1983). As a general rule, an acquisition which primarily benefits the public while only incidentally benefiting a particular private sector is deemed condemnation for a public use. Florence, supra. Moreover, our supreme court has stated:
“It is not the instrumentality employed for operating the public use, but the use itself, that satisfies the constitution. The fact that the use is public and the public may have the privilege of enjoying it, is the controlling principle.”
Columbus Water Works Co. v. Long, 121 Ala. 245, 247, 25 So. 702, 703 (1898).
Our supreme court has recognized that, where the legislature has declared a use or purpose to be a public one, its judgment should be respected by the courts. Florence, supra. This deference has also been held to extend to a municipality enacting ordinances pursuant to this legislation. Florence, supra. Once the determination has been made that the taking is for a public purpose, the fact that private individuals may receive the benefit is not sufficient to take away from the enterprise the characteristics of a public purpose. Florence, supra.
Here, the city’s mayor, the probate court, the circuit court, and this court each found that the acquisition of the described property is for public use and that it is necessary in providing for the public health and welfare that the property be *1103 condemned. As noted in our prior opinion, it appears to this court that there is ample evidence in the record to support a conclusion that the facilities will improve the health standards of the citizens of the community by upgrading the water quality of the navigable streams and Portersville Bay. Furthermore, in condemnation proceedings, the conclusion of the trier of fact is entitled to great weight. Florence, supra.
In her brief in support of her petition for writ of certiorari, Rosemary Parrish asserts that the facts in this case present a case of first impression for Alabama appellate courts. We note, however, that although the facts here are not directly on point with any prior Alabama decision, there are a number of prior decisions of this court and our supreme court which are closely analogous to the case at bar and thus carry considerable precedential value with regard to the facts of this case. For example, in Blankenship v. City of Decatur, 269 Ala. 670, 115 So.2d 459 (1959), our supreme court held that an urban redevelopment proposal where land was to be taken by eminent domain and then sold or leased to private individuals solely for business and commercial purposes did not offend Art. I, § 23, Ala. Const. (1901).
Likewise, in Florence, supra, our supreme court held that the condemnation of property for a parking facility to be constructed by the city pursuant to an agreement with the private developer of an adjacent office building was primarily for public use and was in accordance with the constitution.
This court has also previously addressed an issue similar to that of the case at bar. In Nicrosi v. City of Montgomery, 406 So.2d 951 (Ala.Civ.App.1981), we upheld the condemnation of property for construction of a drainage channel pursuant to the terms of an agreement between private developers and the city, wherein the developers were to reimburse the city for the cost of condemnation.
We find the facts in the instant case indistinguishable from the cases cited above. Here, the condemnation of property by the city is for a project which will be of benefit to the public, the municipality, and to private individuals. Due to the high construction costs of the project, the municipality entered into an agreement with a private corporation to finance the project. Even though the private entity will construct the outfall line, it is apparent from the record that the city will retain all right, title, and interest in the property acquired by the condemnation. The record further indicates that the city does not intend to convey to the corporation any permanent easement or permanent right-of-way over the property condemned.
In light of these facts and the prior decisions of this court and our supreme court, we find that the city’s use of its powers of eminent domain under these circumstances is not repugnant to any provision of the Alabama constitution.
AFFIRMED.
ROBERTSON and RUSSELL, JJ., concur.